May it please the court. Mike Subit and I represent the plaintiff class. If the administrative office sent out a notice that Congress was shutting down the Ninth Circuit in 11 days and advised all of you to go out and find new jobs, if you did that, it would be unreasonable to say that you all had voluntarily departed your positions. That's what the district court held in this case with regard to 130 or so of the automotive dealership workers who work for Gee West Seattle. Let me stop you for a minute, counsel. It appears that you asked the district court to rule, in essence, that if you violate the WARN Act, you give less than 60 days' notice that, as a matter of law, the employees are constructively discharged. Not quite, Your Honor. Okay, well then let me put it another way. It appears that one of the things you're asking this court to do is to say, if you violate the WARN Act, if you give less than 60 days' notice, that you're stopped from relying on that exception of voluntary departure. Again, not exactly in all cases. Here's the thing that struck me in reading the briefs. Congress put that exception of voluntary departure in the WARN Act. It appears, and maybe I'm taking it too far, it appears that you're asking this court to put something into that statute  They could have said, if you don't give 60 days' notice, assuming the WARN Act applies, assuming there's 50 or more employees who have had an employment loss, they could have said in there, you can't rely on this exception of voluntary departure. You're either stopped from claiming it, or by statute, as a penalty, there have been constructive discharges. That's the way it appears. Now, go ahead. Sure. And the reason I didn't agree with your first statement of what we're asking the court to hold, because there could be cases, for example, where an employer violates the WARN Act and announces a plan closing on less than 60 days, where someone leaves who left for some independent reason. Now, it was planning to leave anyway. It had nothing to do with the violation of the WARN Act. And so what we are saying here is that where an employer violates the WARN Act and announces a plan closure on less than 60 days, that employees who left because of that violation, because they only got 10 days to notice that they're not going to be out of a job and not the 60 days that Congress provided, that is not a voluntary discharge. Mr. Simon, who bears the burden of proof on that and other aspects of this? It's not clear, Your Honor, because the way the statute is written, this is viewed as an exception to the concept of what is a departure. And because this is a remedial statute, exemption should be narrowly construed. We have assumed, assuming we do have the burden of proof, we believe we have discharged  But that was not an issue that the district court specifically resolved. We'll assume for the sake of argument. I don't see how you can decide the case until you understand who's got the burden of proof and can figure out whether it's a matter of law that burden has been carried. Your Honor, we believe that in a case such as this, assuming that we have the burden, we believe we've carried it out. And so how? Because we, because the issue of, well, the burden of proof of, let me put it another way. The defendant moved for summary judgment on the argument that every one of these folks has voluntary departed. So the question is, there's both a factual question and a legal question. Right now, the only evidence in the record is that every one of these employees left because the business closed because they were looking for other employment. So the evidence is undisputed. It's really a question of what does the word voluntary mean? Here's what I understand the evidence is. You took some depositions of some managers who, you know, it could be fair to say it was speculation on their part and didn't, in looking at the record, there wasn't an indication by any of these people, at least parts of the record that I saw, where they could, they remembered talking to anybody by name specifically. But I guess you represented the plaintiff, the plaintiff. The class, Your Honor. And you represented the class. Yes, Your Honor. Was there a declaration, an affidavit or a deposition taken by or from any of the members of the class sending forth the reason they left? Well, Your Honor, I quite frankly, I did not feel that submitting several dozen declarations that said we left because they announced the business was closing. How about one? Your Honor, I would need to actually in order to, I would need to do dozens because we're dealing with 130 employees here. And the argument has to do whether the numerosity requirement, the 50 or more is met. So I would minimally have to do about 30. And I did not believe given the evidence, the undisputed evidence that all these employees left because the business closed, that in fact that they told the managers that that was the reason that they were leaving, that that would advance the district courts or any potential appellate courts interpretation of what is really a statutory construction issue. Yeah, it is. It is. And so therefore, I want to go to the statute. As I see the statute, we're really, first of all, we're looking at the Warren Act. We're looking at 2101A2. And we come down to employment loss. That's the word we come to. Correct, Your Honor. And we go to employment loss. And that is defined. That's defined as an employment termination other than a discharge, voluntary departure, or retirement. That's correct. And then we look for voluntary departure. And there is no definition. That's correct. So now I have to find one. What's a voluntary departure? And if I look in the dictionary, which the old district judge did, done or undertaken of one's own free will, voluntary choice to abandon their job before they were terminated, there's another way to look at it. And if I look at the Eighth Circuit, they say voluntary resignation in lieu of being laid off. Now, it doesn't seem to me that anybody who quits before the 60 days is up has done anything but that. Your Honor, the whole law of constructive discharge, which is what ---- Well, but we're not talking about constructive discharge here because the Department of Labor have already said that a worker who, after announcement of a plant closing or mass layoff, decides to leave early, has not been constructively discharged or quit involuntarily. That's not what the Department said, Your Honor. They were responding to a comment that said that all designations or all retirements after the announcement of a plant closure, whether it occurs on 60-day notice or without 60-day notice, the comment said those are all involuntary and constructive discharge. And what the Department of Labor said, no, of course not. But you want us to adopt a rule that is directly contrary to that, don't you? No, we don't, Your Honor. Because what the Department of Labor said, first of all, is it's not a constructive discharge when you're given 60 days. That's what they said. Well, but the problem comes in that what you're really suggesting is then if, in fact, they're given the notice and the plant terminates before the notice is at least 60 days out, in those instances they're paid every time, regardless of why they quit or they didn't, regardless of whether it was voluntary or not, whether they found a job or not, they ought to get paid. I don't find that in the statute. That's what you're asking us to do. What you're really saying is give the notice. If this notice had been 61 days, you wouldn't be here. Absolutely not. Well, the problem comes in that it wasn't the company's fault it wasn't that long, and it wasn't anybody's fault it wasn't that long. It was the circumstance. I mean, the notice didn't even say that it was going to happen. The notice said they were going to sell to somebody else, and then the sale didn't come through. So I guess I'm trying to figure out again, and I'm giving you every benefit of the doubt. If I quit after getting my notice, and I quit, I don't wait for my 60 days. I just quit, what in this statute says I get the money? Because it's not a voluntary departure when you quit under circumstances with the employer who has already defeated the purpose of the statute by only giving you 11 days' notice. And again, Your Honor, the long case, which is the Fourth Circuit case, specifically says that the reason it's not a constructive discharge when the employee gets the notice is because they got 60 days. The whole point is, and if you are told, and in this case, Your Honor, we don't know, 10 is not really the issue. What they said is we are going to be closing unless we find a buyer. The first sentence is we are going to be closing the door. The point is it creates a giant loophole for an employer to exploit. If the employer can wait until the very last minute, which, again, they admit they did here  So they're defeating the purpose that Congress has enacted the statute for. And then they say go out and find another job. That gives the employer every incentive to get itself out of a Warren Act violation that it's already committed. And that's what we're talking about. Congress could not have intended this result. The reason this case has never come up before is no employer has ever thought to argue that once we violated the Warren Act and tell people to go get new jobs, if they do just that, they have voluntarily quit. Well, Castro is against it, isn't it? Wasn't that a 15-day? Your Honor, very different there, Your Honor. What the employer did in that case is they put everyone on leave. And so they didn't have to work. And then one person out of the several hundred ended up, quote, voluntarily resigning. And they claimed the issue was not what's a voluntary resignation. The issue was whether if someone voluntarily resigns, they get payment. And, of course, the answer to that is no. So Castro is a different case. There is no case that involves the question of whether an employee who then was told the plan is closing in 11 days and told to find another job goes out and does that, and that's considered voluntary. It defeats the entire purpose of the statute, which is people should have 60 days of uninterrupted income. Yes, Your Honor. Judge Peckman, in her disposition, said that you did not argue constructive discharge in the district court. You're shaking your head negatively. You're right, Your Honor, because we made the very same argument that we made to this court. And, you know, U.S. Seattle doesn't claim we didn't make that argument. I cannot explain that comment, Your Honor. We made the same constructive discharge argument we made here. Okay. So if I go prowl around Pacer, I'll find it in your opposition to the summary judgment. That is absolutely correct, Your Honor. We made the same argument. What we said is this is analogous to constructive discharge, which is what the DOL regulation cited says. We cited the Kalvanskas case, which is the same case we cited, which says if you're given you know, this is the issue about choice. If you applied the dictionary definition to Kalvanskas, it would have come out the other way, because that person had a choice to take zero income or retire. But the court said it was not a meaningful choice. And so that was what Congress understood when it said voluntary departure. Did these employees have a meaningful choice? I'd like to reserve the remainder of my time for rebuttal. All right. Good morning, Your Honors. I'm Rick Lentini from the law firm Ryan Swanson, representing the appellee Guy West Seattle. And Judge Peckman correctly ruled, as a matter of law, that those employees who abandoned their jobs after receiving notice of the closure voluntarily left the firm. And that, therefore, under the Warren Act, since there were approximately 30 employees left total, there weren't enough employment losses, 50 required under the statute, to Mr. Yes, Your Honor. Yeah. Mr. Lentini, if you go down the, you know, the steps of the statute, as Judge Smith was doing, which you eventually get to the point where you have to decide whether the loss of employees, which here clearly met the numeric threshold level, if those employees did not voluntarily depart, you have to ask, well, what does the exception mean when it says, unless you voluntarily departed, retired, or were discharged for cause? The other two are really pretty easy to get your hand around. You know when you retire, and you know when you're canned. But don't they all three, as a sort of pattern of words, relate to an action that is not related to the plant closing? I mean, isn't that one way of looking at how you should interpret those, that series of words? In other words, if you voluntarily leave in a way that's not related to a plant closing, or if you retire, it's not related, and if you get canned, it's not related to the plant closing. In other words, the nexus requirement. Well, Your Honor, I don't believe so. I don't believe that there's anything in the statute that indicates that. There isn't, but we've got to figure out what it does mean. Right. And the Department of Labor has not interpreted it that way. But let me, I've got something that I think addresses your question. I think Your Honors have raised a number of problems with the appellant's position here. There's another one that we haven't discussed, and that is that the appellees are assuming that the 11-day notice violated the statute, assuming that the statute applied here, because 60 days notice wasn't given. And there's a number of reasons that that's not correct. One is we don't know when the closing would have occurred, or if it would have occurred, if the employees had not abandoned the job. But if you go to Section 2102B1, there is a situation where less than 60 days notice is appropriate. You didn't argue that in the trial. Oh, we did, Your Honor. Absolutely. That is the faltering business defense. In July of 2007, the employer began, and there's undisputed evidence in the record citing it in our brief. Well, let me put it this way. Yes. The district court didn't rule on that basis, faltering business. No, I think the district court ruled and determined that the amount of time given in the notice is irrelevant. And I think relying upon Castro, as you mentioned, Long, and Gwyn as well, I think the appellant argues that those employees quit before notice was given, but that's not what the case says. The case doesn't identify exactly when they quit. So Judge Peckman did not explicitly address that issue. But the plaintiff is saying it's established that GE West Seattle violated the statute by giving an 11-day notice, assuming, of course, that we were going to close on October 7th, but putting that aside for the moment. That's not true. It's undisputed that we had a reasonable and good faith belief under the statute. But that's not been adjudicated yet. No. I mean, didn't you make ñ yes, excuse me. It's a separate defense. I mean, isn't that a defense? It is a separate defense, but the appellant has made it relevant to this defense by arguing that our notice, our shorter notice, violated the statute and resulted in a constructive discharge and therefore not a voluntary departure. Well, look, I'm just being really simple-minded about this thing. But I'm saying if there's a voluntary departure that's unrelated to the plant closing, that is it's not a consequence of the plant closing, the loss of employment is not a consequence of the plant closing. And I looked at the record, and the record seems undisputed, not from the testimony of your managers but from your business records, that the reason for departure was business closed. And I say game over. Why should I go beyond that and try to be fancy about what all these words mean when the only evidence in front of me shows that the reason for those employees' departure was business closed? Well, Your Honor, for a few reasons. Number one, yes, our managers speculated that that was the reason. I remember. Okay. Understand. I'm not talking about that. The business records were explained by Sondra Godin. It's in the record. And she said she had no reason to know why these folks left or when they left, and therefore she created this form for the purposes of the litigation in response to her argument and that she put that in there because she doesn't know when they left. Well, isn't it just a matter of just plain common sense that the reason these people bailed was because of panic that they were going to lose their job in 10 days, which is precisely the reason that the WARN Act exists to require 60 days of a window rather than 10 days of a window? No, it's not, Your Honor. In fact, 30 people stayed. They're getting paid for staying. Well, they're getting paid if and until October 7th. It turned out to be until October 5th. Correct. But unlike the notice in Long, for example, you didn't say, look, if we do close up, you folks are going to get 60 days' pay and benefits. If I may finish answering your question, Your Honor, those folks stayed for whatever reasons they had, so it wasn't an obvious choice to quit, and they had a volitional and a free will choice to stay. Also, it was not certain that there would be a closing. While the notice given, the announcement written, provides resources for seeking other jobs, it also requests that the employees stay because they actually have a purchaser who ultimately came in and looked on the 6th in line, and they want to keep operating to give the chance for the business to remain open. So it's not just obvious that anyone would quit. Also, Your Honor, it's not obvious why they quit. Some of these employees may have found other jobs quickly. For instance, and this isn't in the record, Your Honor, but service technicians are in incredibly high demand and were at the time, and could easily find other jobs. So I don't think we can make any assumptions. The burden of proof is the plaintiff's on the entire prima facie case. The plaintiff presented no evidence that any one of these employees who abandoned their jobs solely because of their fear and needing to seek other employment. There's also no evidence. I don't understand. I guess I'm just hung up because of your own business record, which shows the reason for leaving was business closed. Now, sure, there may be some explanations for it. It's not a business record. So why do they have an obligation to put on anything more than that and say, look, business closed, case closed? Your Honor, it's not a business record. Well, we didn't put anything on the spreadsheet for them to come back and say, oh, no, we just made that up because we had to put something in on the spreadsheet. And so we just put it in because it was easy, not because it's true, just because it's easy. And so we're going to go take the depositions of these folks and show that our explanation was really not true, that instead what they did was leave because they got a job at Chrysler or Mercedes or whoever. Your Honor, it's not a business record. The testimony was that that document was created in response to an interrogatory and produced in the litigation. But you're representing it's true, aren't you? I mean, when you submit it in response to an interrogatory? No, Your Honor, because there was exactly the deposition that you just described where the person who created the document said, I'm putting that in as a placeholder. I don't know why they left, and I don't know when and what day they left. So I understand if it has created some confusion, but that is the record. I guess the real problem that I have is that I go down to voluntary departure, and I'm still ‑‑ I mean, I ask him the questions that I did about voluntary departure, but I'm still trying to determine in my mind how voluntary departure in the context of this statute could mean that everyone who doesn't get the 60-day notice and leaves gets nothing, and then when we finally get down to less than 50 employees, they don't even get the 60-days pay. Well, Your Honor ‑‑ I mean, it seems to me that that is contrary to everything Congress was trying to do there. I think that Congress is obviously trying to give the employees notice and determine that 60 days is a reasonable time in most circumstances. There's a separate provision where less notice is appropriate. I mean, to me, to be fair, I would be glad to think about this, but I have to determine what Congress meant by voluntary. Correct. And I have to put a definition to it, and the definition you really want me to put to it is if you get a notice, even though there's not 60 days, and you go find your new job before you get there, and now based on this definition, the amount of employees goes down below 100, nobody gets the 60-day pay. That's true, but there's support in the statute for that, Your Honor, because the other section, the 2102, the section that provides for less notice, that section provides that a business that is faltering and is actively seeking means to remain open may give a shorter notice if it reasonably and in good faith believes that giving the 60-days notice will jeopardize its ability to remain open. But we don't know that here. That says that was ever adjudicated in the district court, and you're wanting me now to adjudicate it here. Well, Your Honor, that's in the record in the... I don't find anything in the judge's decision. Not in the judge's decision. You're absolutely correct, Your Honor. That's the only way it's adjudicated. Well, the judge doesn't... Well, no, the judge adjudicated and granted us summary judgment. You can... On that basis. Correct, but you, of course, can affirm on any basis. But I believe the judge did on that basis, subsumed in the judge's decision that the amount of time notice given was not material. That is one of the reasons that it's not material. We've identified a number of others. The failure to present on the appellee's part, or appellant's part, to present any evidence of exactly what the reasons were for these employees' decision to adjourn. Your argument, I see, is twofold. One is on the statutory interpretation of what I ought to say is voluntary. Your second is if I find voluntary interpreted as you suggested, then we've got no evidence that they quit. That's correct, Your Honor. And, of course, my colleague has suggested, based on what we have in this record, looks obvious that we may not need affidavits to find enough evidence that they quit because of the closure. Your Honor, and... And that's where we are. Well, in looking for the definition or the understanding explanation of what voluntary means, we do have the Department of Labor and the CFR setting our constructive discharge doctrine, overlaying it on this statute. Well, we don't even have to go to this constructive discharge doctrine to get to my interpretation, which is you're really asking me to say, I'm going to gut this statute. If you give 60 days' notice and they quit first, and then you get under 100 employees, you don't have to pay anyway. I have a tough time thinking the Department of Labor was going there. Yeah, that is how the statute works as currently written, though, Your Honor. I don't see any other interpretation. May I ask another question to which I should know the answer, but I didn't have time to really track it through? The district court granted a partial summary judgment or a full summary judgment? Full summary judgment, Your Honor, determining that to the defendant because it was undisputed that fewer than 30, well, fewer than 50... Okay. But it was a full summary judgment. It wasn't a partial summary judgment. That's correct, Your Honor. Okay. Thank you. Thank you. Thank you. Very briefly, Your Honor. The party stipulated in the district court that the one and only one issue that we would bring for resolution was the issue of voluntary departure. That was the party stipulated to. We reserved briefing on all issues such as the D defense. What the court should do is reverse the summary judgment to the defendant  construction about what voluntary departure means. And, Judge Reimer, I think you have it exactly right in terms of what our position is, what is voluntary departure. Is that a voluntary departure is one caused by something other than the employer's violation of the Warren Act. And that, and you read the term in the context of the other terms in there, retirement for cause, that is the natural and reasonable interpretation. And this court is the first one to have that issue of interpretation. And that is exactly the interpretation we believe the court should hold. Because any other interpretation would gut the statute. It would defeat the entire purpose. And, again, Your Honor, the exact reason, we had interrogatory answers saying everyone left because the business closed. Given that, as I said earlier, I didn't think there was any need to go further and submit any evidence of dozens and dozens of declarations saying just that. If the court has no further questions, I thank the court for its time. Thank you. Thank you. Case 09-36110 is now submitted. We thank counsel for their argument and all of counsel for a good morning with us. And we stand adjourned.
judges: Cebull, Rymer, Smith N. R.